STEVEN M. HANLE (*pro hac vice forthcoming*)
  shanle@stradlinglaw.com
SALIL BALI (*pro hac vice forthcoming*)
  sbali@stradlinglaw.com
IRELAND R. LARSEN (*pro hac vice forthcoming*)
  ilarsen@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
Tel: (949) 725-4000

MENG ZHONG (NV Bar No.: 12145)
  Meng.Zhong@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
8488 Rozita Lee Ave., Suite 400
Las Vegas, NV  89113
Tel.: (702) 949-8200

*Attorneys for Plaintiffs TSK Laboratory Europe B.V.; Johnson Global Medical Products Inc., d/b/a TSK Laboratory International, Canada; and ACollaboratory America Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| TSK Laboratory Europe B.V.; Johnson Global Medical Products Inc.; d/b/a TSK Laboratory International, Canada; and ACollaboratory America Inc.,<br><br>Plaintiffs,<br><br>vs.<br><br>Kabushikigaisha Tasuku d/b/a TSK Laboratory, Japan,<br><br>Defendant. | Civil Action No.<br><br>**PLAINTIFFS' COMPLAINT FOR PATENT INFRINGEMENT; TRADEMARK INFRINGEMENT; AND UNFAIR COMPETITION – FALSE ADVERTISING**<br><br>**JURY DEMAND** |

-1-

COMPLAINT

Plaintiffs TSK Laboratory Europe B.V.; Johnson Global Medical Products Inc., d/b/a TSK Laboratory International, Canada; and ACollaboratory America Inc. (together, "TSK" or "Plaintiffs"), by and through their attorneys, for their Complaint against Defendant Kabushikigaisha Tasuku d/b/a TSK Laboratory, Japan ("JAPAN" or "Defendant") hereby allege as follows:

**THE PARTIES**

1.      Plaintiff TSK Laboratory Europe B.V. is a Dutch corporation headquartered at Gemullehoekenweg 42, 5062CD, Oisterwijk, the Netherlands.

2.      Plaintiff Johnson Global Medical Products Inc., d/b/a TSK Laboratory International, Canada is a Canadian corporation headquartered at 1686 W 75th Ave, Vancouver, BC V6P 6G2, Canada.

3.      Plaintiff ACollaboratory America Inc. is a Washington corporation headquartered at 19405 68th Drive NE, Suite F, Arlington, Washington 98223.

4.      Plaintiffs are informed and believe Defendant Kabushikigaisha Tasuku d/b/a TSK Laboratory, Japan is a Japanese corporation headquartered at 1510-1 Soja-Machi, Tochigi-Shi, Tochigi-Ken, Japan 328-0002.

**JURISDICTION AND VENUE**

5.      This action is based on the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 ("TDRA") (15 U.S.C. §§ 1051, *et seq*.).

6.      This is also an action for patent infringement arising out of U.S. Patent Laws, including 35 U.S.C. §§271, 281, 283, 284, and 285.

7.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and 15 U.S.C. § 1121 (Lanham Act).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) and (c)(3), because Defendant is not resident in the United States but is subject to the court's personal jurisdiction by virtue of committing acts of infringement, false advertising, and unfair competition in this District.

-2-

COMPLAINT

9. This Court has personal jurisdiction over Defendant. Defendant has committed acts of infringement, false advertising, and unfair competition in and directed at this District, including importing the Accused Products into this District, and infringing TSK's patent and trademark in this District.

## PATENTS-IN-SUIT

10. TSK Laboratory Europe B.V. is the owner of all rights, title, and interest in and to United States Patent No. 9,913,949 (the "'949 patent") entitled "Needle Hub Assembly for a Syringe and a Syringe Comprising such Needle Hub Assembly." The '949 patent issued on March 13, 2018 and remains valid and enforceable. TSK also owns corresponding foreign patents in Europe and Asia. A copy of the '949 patent is attached herein as **Exhibit 1**.

## TRADEMARKS-IN-SUIT

11. TSK Laboratory Europe B.V. is the owner of all right, title and interest in and to U.S. Trademark Registration Numbers 6,976,233 (the "'233 Mark") and 6,970,254 (the "'254 Mark") for TSK (word and logo respectively) in class 10 for "Surgical and medical apparatus and instruments for use in general surgery, parts and fittings thereof; needles for medical use; hypodermic needles" (collectively the "TSK Marks"). TSK has other related marks in the U.S. and Europe.

12. TSK Laboratory Europe B.V. is the owner of all right, title and interest in and to U.S. Trademark Registration Number 6,749,094 (the "'094 Mark") for TSKiD in class 10 for "Surgical and medical apparatus and instruments, namely, needles, cannulas for dermal filling and hypodermic needles."

13. TSK Laboratory Europe B.V. is the owner of all right, title and interest in and to U.S. Trademark Registration Number 4,953,559 (the "'559 Mark") for STERiJECT in class 10 for "Surgical and medical apparatus and instruments, namely biopsy instruments and injections syringes and structural parts and fittings thereof; needles for medical use; hypodermic needles."

14. TSK Laboratory Europe B.V. is the owner of all right, title and interest in and to U.S. Trademark Registration Number 4,574,119 (the "'119 Mark") for STERiGLIDE in class 10

-3-

COMPLAINT

for "surgical apparatus and instruments, for medical, dental or veterinary use; medical apparatus and instruments, namely needles and cannulas for dermal filling; hypodermic needles."

15.    TSK Laboratory Europe B.V. manages, monitors and assures quality control of any trademark uses by Johnson Global Medical Products Inc., d/b/a TSK Laboratory International, Canada and ACollaboratory America Inc. In fact, most art-work, package design or layout, and marketing collateral for North America using the trademarks is designed and produced by TSK Laboratory Europe B.V.  Copies of the USPTO Certificates of Registration for the foregoing trademarks are attached herein as **Exhibit 2**.

16.    TSK and its affiliates have continuously used these trademarks in conjunction with its cannula and needle products since at least 2010.

<strong>FACTUAL BACKGROUND</strong>

17.    TSK is engaged in advanced medical technology focused on developing highly specialized injection and needle solutions for aesthetic medicine, ophthalmology, interventional procedures, and other precision healthcare applications.

18.    Since 2010, TSK has worked to build a strong reputation around its brand for innovation through the design of ultra-thin needles, low dead space injection systems, and flexible microcannulas intended to improve patient comfort, procedural accuracy, medication efficiency, and clinician control.

19.    For over a decade, TSK has invested significant effort into engineering refinements, physician collaboration, regulatory compliance, and high-quality manufacturing standards to address demanding clinical needs in minimally invasive medicine.  TSK's efforts and investments in promoting its goods has created considerable goodwill around its brands and a reputation for high quality and customer satisfaction.

20.    The TSK Marks, the '094 Mark, the '559 Mark, and the '119 Mark are federally registered with the U.S. Patent and Trademark Office, as well as in foreign trademark offices. These trademarks are in full force and effect, and exclusively owned by TSK Laboratory Europe B.V. TSK has continuously used these trademarks, since at least 2010 until the present and during all time periods relevant to the claims asserted herein.

-4-<br>COMPLAINT

21. Further, for years TSK has engaged in the design and development of surgical and medical apparatuses.  An example of such innovation is found in the '949 patent.

22. The '949 patent is titled "Needle Hub Assembly for a Syringe and a Syringe Comprising such Needle Hub Assembly."  On March 13, 2018, the '949 Patent was duly and legally issued by the U.S. Patent Office to TSK.  TSK Laboratory Europe B.V. owns all rights, title and interest to the '949 patent.

23. The Parties herein have been engaged in a business relationship over the years wherein Japan has contract manufactured and/or sourced certain products exclusively for TSK.

24. JAPAN is aware and has been aware of the TSK's trademarks and TSK's use of said marks for its products sold and offered in the United States, including without limitation in association with Plaintiffs' TSK STERiJECT and STERiGLIDE products.

25. Despite its knowledge of TSK's trademarks and its business relationship with TSK, JAPAN secretly attempted to apply for a federal registration of a "TSK" mark in 2022. S*ee* U.S. Trademark Application Serial Number 79347716.

26. In March 2023, the USPTO examiner issued an Office Action refusing to grant the application, based on a finding of likelihood of confusion with the '254 and '233 Marks.

27. On information and belief, JAPAN did not respond to the March 2023 Office Action or raise any arguments to contradict the examiner's findings, and allowed the application to be abandoned.

I.     **JAPAN'S INFRINGEMENT OF THE TSK MARKS**

28. JAPAN has recently begun marketing and promoting products to be sold in the U.S. using Plaintiffs' TSK Marks. For example, JAPAN's advertisements and promotions of its "TSK Select Needle" and "TSK Syringe" product use the TSK Marks. See below:

COMPLAINT



29.     JAPAN recently applied for registration of another U.S. trademark that is confusingly similar to Plaintiff TSK Marks, namely TSK LABORATORY in class 10 for, *inter alia*, medical and surgical apparatus and instruments, namely syringes, needles and cannula.  *See* U.S. Trademark Application Serial Number 79447411.

30.     JAPAN's marketing, advertising, packaging and website refer to JAPAN as 'TSK' or "TSK Laboratory, Japan," and promote JAPAN'S infringing products in English:



31.     The font used by JAPAN for 'TSK' in certain of its advertising is substantially similar, if not identical, to the font used in the '233 Mark. See examples below:



32.     JAPAN's packaging for its infringing products substantially resemble TSK's packaging.  Instead of the orange color scheme in other branding JAPAN uses the same teal color scheme as TSK's packaging for its STERiJECT product, as well as similar or identical fonts to TSK, and a line in the same position as used in TSK's packaging, as shown below:

COMPLAINT



33.    JAPAN markets its infringing TSK SELECT Needle and TSK Syringe to the same consumers as Plaintiffs' products, including distributors and end-users.  For example, on information and belief, in August 2025 JAPAN approached one of TSK's largest U.S. distributor customers to promote the distribution and sale of TSK SELECT Needle and TSK Syringe.

34.    Plaintiff TSK markets and sells its TSK's STERiJECT® LDS Needles to distributors, end-users and sub-distributors in a variety of fields, including aesthetic medicine, compounding pharmacies, medical device distributors, regional healthcare systems, and university medical centers/hospitals.  TSK products are also sold to individual end-user physicians and practices including: ophthalmic/retinal practices, vein centers, dermatology offices, med spas/medical aesthetics/rejuvenation clinics, and reconstructive/plastic surgery

-8-
COMPLAINT

centers.  On information and belief, JAPAN is marketing its products to the same distributors and end-user customers currently purchasing TSK products.

35.    TSK and JAPAN are direct competitors.  Both TSK and JAPAN sell specialty needles and syringes designed for the same medical uses and target the same healthcare customers, such as hospitals, clinics, and medical distributors.  Since they offer nearly identical products that serve the same function in the same market, they will compete directly on pricing, quality, reliability, and customer relationships.

36.    On information and belief, JAPAN has been systematically contacting TSK's customers to market and sell the Accused Product, and in the process trading on the customer confusion created by JAPAN's infringement of the TSK Marks.

37.    TSK never authorized JAPAN to use its TSK Marks or trade dress in the U.S. in any fashion, much less to directly compete with TSK.

38.    On information and belief, JAPAN's offering of syringes or other surgical and medical instruments under its 'TSK' designation is likely to cause and has caused consumer confusion with the TSK Marks.

39.    On information and belief, JAPAN is unfairly benefitting from its acts of willful trademark infringement by usurping the benefits of TSK's positive reputation, goodwill and substantial U.S. advertising.

40.    The likelihood of confusion is particularly acute because the parties market highly related medical products to overlapping customers through the same channels of trade. JAPAN uses the identical "TSK" designation in connection with needle and syringe products that directly compete with TSK's products.  JAPAN also intentionally adopted packaging elements that closely resemble TSK's distinctive packaging, including the same or substantially similar color scheme, font styles, and line placement.  These similarities create the false impression that JAPAN's products are associated with, sponsored by, approved by, or otherwise connected to TSK.

-9-

COMPLAINT

**II.     JAPAN MAKES FALSE AND MISLEADING ADVERTISEMENTS AND CLAIMS ABOUT TSK'S PRODUCTS**

41.     JAPAN has presented in its marketing the table below, which purports to compare its infringing TSK SELECT Needle products with TSK's STERiJECT products.  The table falsely represents the nature, characteristics and qualities of TSK's products:

## TSK SELECT™ Needle | Features — TSK

| | | TSK SELECT™ Needle | STERiJECT™ HPC | STERiJECT™ PRC | STERiJECT™ PRE |
|---|---|:---:|:---:|:---:|:---:|
| Made in Japan | High quality manufactured at our own factory in Japan | ✓ | ✓ | ✓ | ✓ |
| Optimized tip design | Optimal needle tip processing to suit the needle tube | ✓ | ✓ | ✓ | ✓ |
| Hard material hub | The needle base is less likely to expand, reducing the risk of leakage when injecting high-viscosity liquids | ✓ | ✓ | ✓ | |
| Luer lock type | Reduces the risk of needle detachment (pop-off) when used with luer lock type syringes | ✓ | ✓ | | |
| Low dead space | Minimizes residual solution after injection | ✓ | | | |
| Hub marking | Easy bevel orientation confirmation. | ✓ | | | |
| Hub design | Compatible with both luer lock and luer slip type syringes* | ✓ | | | |
| Wide range of sizes | Lineup that meets a variety of needs | ✓ | | | ✓ |

*Only for syringes compliant with standards of International Organization for Standardization (ISO)          *Source: Internal data

42.     For example, the table falsely represents:

a.   that STERiJECT PRC and STERiJECT PRE are not compatible with a luer lock syringe;

b.   that none of the STERiJECT needles are compatible with both luer lock and luer slip syringes;

c.   that only one of the STERiJECT needles has a range of sizes that meet a variety of needs; and

d.   that TSK does not have a low dead space needle.  (The table omits TSK's LDS STERiJECT needle from the comparative table despite the LDS needle having the listed features.)

43.     This comparative advertising is clearly intended to cause consumers to alter their purchasing decisions by misleading them into believing JAPAN's infringing needles have a broader feature set.  The deception is exacerbated by JAPAN's infringement of the TSK Marks,

-10-

COMPLAINT

which lead customers to believe that JAPAN's TSK SELECT Needle is a new or alternative design of TSK's needles.  JAPAN thus benefits from both the association with TSK's goodwill and the false impressions that its products include features missing from TSK's products.

**III.    JAPAN'S ENTRY INTO THE U.S. MARKET CAUSES CONFUSION**

44.    On April 9-12, 2026 JAPAN attended the American Med Spa Association Medical Spa Show ("AMSPA") show in Las Vegas, Nevada, which is a large trade show for the burgeoning med spa market.

45.    On information and belief, JAPAN imported one or more TSK SELECT Needles and TSK Syringes into the U.S. and displayed it at the AMSPA for the purpose of marketing and sale.  JAPAN used a method referred to as "suitcasing," where a business that has not registered to exhibit at a trade show smuggles its products into the exhibition area in a suitcase, or similar packaging, and uses them to solicit business directly from conference attendees.

46.    TSK's largest U.S. distribution partner also attended AMSPA, as did at least four other small- to mid-sized distribution partners and customers of TSK's products.

47.    On information and belief, during AMSPA, a representative of JAPAN approached one of TSK's existing distribution partners offering to sell JAPAN's TSK SELECT Needles and TSK Syringes to the partner directly.  The partner declined and stated that it already purchased TSK products.

48.    On information and belief, JAPAN also contacted an aesthetic medicine-focused distributor, who already had a relationship with TSK, ahead of the show to arrange a meeting at the show.  On information and belief, JAPAN and the aesthetic medicine-focused distributor negotiated an agreement to onboard certain "new needles" directly from JAPAN, including the TSK SELECT Needles.

49.    JAPAN's direct sales of the TSK SELECT Needles and TSK Syringes into the U.S. would irreparably harm TSK and create widespread market confusion.

-11-

COMPLAINT

## IV.    JAPANS ACTS OF PATENT INFRINGEMENT

50.    On information and belief, JAPAN imported one or more TSK SELECT Needles ("Accused Products") into the U.S., used them at AMSPA for the purpose of marketing and selling, and offered to sell them to U.S. customers, all in violation of 35 U.S.C. §271.

51.    Claim 1 of the '949 patent reads:

1. A needle hub assembly for a syringe, said assembly having a longitudinal axis comprising:

a needle hub body having a syringe connector for receiving an attachment member of a syringe at a first end of the body and a needle receiving portion at a second opposing end of the body,

a needle extending from the needle receiving portion,

wherein the syringe connector comprises a substantially conical receiving opening for receiving a syringe attachment member, at least a distal end thereof, wherein a length of said opening, measured along the longitudinal axis, is between 3-7 mm.

52.    On information and belief, the Accused Products include each element of the claim, as shown in the following images and text from JAPAN's marketing and datasheet and through inspection of the Accused Products:




Accordingly, the Accused Products infringe claim 1 of the '949 patent under 35 U.S.C. § 271 either literally or under the doctrine of equivalents.

53.    On March 31, 2026, TSK, through its counsel, advised JAPAN in writing that the Accused Products infringe '949 patent.  Accordingly, at the time JAPAN imported, used and/or

-12-

COMPLAINT

offered to sell the Accused Products at AMSPA, JAPAN knowingly and willfully infringed the '949 patent, and is liable for enhanced damages under 35 U.S.C. §284.

### FIRST CLAIM

### INFRINGEMENT OF U.S. PATENT NO. 9,913,949

54. Plaintiffs reallege and incorporate by reference each of the allegations contained in Paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. On information and belief, Defendant, without authority, imported the Accused Products into the United States, including within this District, used the Accused Products for the purposes of marketing and sale, and offered to sell the Accused Products within the United States.

56. Defendant has thus directly infringed at least Claim 1 of the '949 patent either literally or under the doctrine of equivalents by importing the Accused Products, in violation of 35 U.S.C. § 271(a) and (g).

57. As a direct and proximate result of Defendant's patent infringement, Plaintiff has been damaged, including in an amount to be determined at trial, but in no event less than a reasonable royalty. JAPAN is also liable for enhanced damages under 35 U.S.C. §284 because JAPAN's infringement was willful.

### SECOND CLAIM

### FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. § 1114; Lanham Act § 32)

58. Plaintiffs reallege and incorporate by reference each of the allegations contained in Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59. TSK is the valid owner of all right, title, and interest in and to the "TSK" mark and related marks within the United States and Europe. Specifically, TSK owns U.S. Trademark Registration Nos. 6,976,233 and 6,970,254 in International Class 10 for "Surgical and medical apparatus and instruments for use in general surgery, parts and fittings thereof; needles for medical use; hypodermic needles" (the "TSK Marks").

-13-

COMPLAINT

60. The TSK Marks are valid and enforceable and continuously used in connection with surgical cannula and needle products since at least 2010. Through extensive use, promotion, and sales, the TSK Marks have become distinctive and have acquired substantial goodwill and recognition in the medical products marketplace.

61. On information and belief, Defendant JAPAN has, with actual and constructive notice of TSK's federal rights, used confusingly similar branding in interstate commerce, as alleged herein, including with its orange TSK logo, the term TSK in its branding as well as its "TSK Select Needle" and "TSK Syringe" products.

62. On information and belief, JAPAN's uses of the identical "TSK" designations in connection with products that are identical or highly related to those covered by TSK's federal registrations are likely to cause confusion as to the source, sponsorship, affiliation, or approval of its goods or services in violation of Section 32 of the Lanham Act, as amended, and 15 U.S.C. § 1114.

63. On information and belief, the likelihood of confusion is further heightened by JAPAN's deliberate imitation of TSK's packaging and trade dress.

64. On information and belief, JAPAN intentionally abandoned its own orange color scheme and adopted packaging that mirrors the appearance of TSK's packaging, including the use of substantially similar colors, fonts, and graphic elements.

65. On information and belief, the overall commercial impression created by JAPAN's packaging is designed to resemble TSK's products and branding.

66. On information and belief, JAPAN's conduct demonstrates a deliberate intent to trade upon and appropriate the goodwill associated with the TSK Marks.

67. Despite the fact that Defendant has actual knowledge of TSK's right in and to the TSK Marks, Defendant has used, and upon information and belief, will continue to use the infringing branding with complete disregard of TSK's rights.

68. The Defendant's actions constitute willful trademark infringement, false designation of origin, false representation, and unfair competition.

-14-

COMPLAINT

69.    Through its continued use of the infringing branding, Defendant has misappropriated TSK's rights  in and to the TSK Marks, as well as the goodwill associated therewith.  As a direct and proximate result of JAPAN's infringing conduct, TSK has suffered and will continue to suffer substantial and irreparable harm, including damage to its goodwill, reputation, and ability to control the use of its marks, as well as lost sales and customer confusion.

70.    Unless enjoined by this Court, JAPAN's infringing conduct will continue to cause irreparable injury to TSK for which there is no adequate remedy at law.

71.    Upon information and belief, Defendant's unlawful acts were committed with full knowledge of TSK's rights and with the intention of deceiving and misleading the public.

72.    Upon information and belief, Defendant's unlawful acts were committed with full knowledge of TSK's rights and with the intention of causing harm to TSK.

73.    Upon information and belief, Defendant's unlawful acts were committed with full knowledge of TSK's rights and with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of TSK and the TSK Marks.

74.    Accordingly, TSK is entitled to injunctive relief, JAPAN's profits, damages sustained by TSK, treble damages where appropriate, attorneys' fees, costs, and all other relief authorized under the Lanham Act and applicable law.

## THIRD CLAIM

### FEDERAL UNFAIR COMPETITION—FALSE ADVERTISING

### (15 U.S.C. § 1125, Lanham Act § 43(a))

75.    Plaintiffs reallege and incorporate by reference each of the allegations contained in paragraphs 1 through 74 in this Complaint as though fully set forth herein.

76.    By the actions herein alleged, Defendant has violated the Lanham Act § 43(a), 15 U.S.C. § 1125(a), by using false and misleading statements regarding their products and commercial activities as alleged above, including in paragraphs 41-43.

-15-

COMPLAINT

77.    Defendant's misrepresentations alleged herein at paragraphs 41-43 were false when made.  Defendant's false and misleading statements and advertisements as alleged above are material and have actually deceived or have the tendency to deceive potential customers.

78.    Defendant has caused the above-identified statements and advertisements to enter interstate commerce at least through its presentations to customers or prospects in the United States.

79.    As a result of Defendant's above-identified statements and advertisements, Defendant has been unjustly enriched and TSK has been damaged, including irreparably by, among other things, a lessening of the goodwill associated with TSK's products and services. The amount of TSK's damages is unknown at this time.

80.    On information and belief, unless enjoined and restrained, Defendant will continue the acts complained of herein, and TSK will continue to suffer irreparable damage, and it will be extremely difficult or impossible to ascertain the amount of compensation which would afford TSK adequate relief.

81.    Accordingly, TSK is entitled to injunctive relief, JAPAN's profits, damages sustained by TSK, treble damages where appropriate, attorneys' fees, costs, and all other relief authorized under the Lanham Act and applicable law.

## JURY DEMAND

82.    Plaintiffs hereby request a trial by jury on all matters to which they are entitled to by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant as follows:

A.    A preliminary and permanent injunction enjoining Defendant from further acts of trademark infringement, patent infringement, and false advertising.

B.    An award of damages adequate to compensate Plaintiffs for patent infringement, but in no event less than a reasonable royalty, against Defendant pursuant to 35 USCS § 284.

-16-

COMPLAINT

C.    An award of enhanced damages against Defendant for willful patent infringement pursuant to 35 USCS § 284

D.    An award of Plaintiffs' actual damages against Defendant for trademark infringement pursuant to 15 USCS § 1117.

E.    An award of Defendant's profits against Defendant for trademark infringement pursuant to 15 USCS § 1117.

F.    An award of enhanced damages against Defendant for willful trademark infringement pursuant to 15 USCS § 1117.

G.    An order requiring defendant to deliver up for destruction all infringing articles pursuant to 15 USCS § 1118.

H.    An award of attorney's fees against Defendant pursuant to 15 USCS § 1117 and 35 USCS § 285.

I.    An award of costs of this action against Defendant;

J.    An award of prejudgment and post-judgment interest against Defendant.

K.    Such other reliefs as this Court deems just and proper.

Dated: June 11, 2026                STRADLING YOCCA CARLSON & RAUTH LLP


By: /s/ Meng Zhong
    Steven M. Hanle
    Salil Bali
    Ireland R. Larsen

WOMBLE BOND DICKINSON (US) LLP
MENG ZHONG (NV Bar No.: 12145)
8488 Rozita Lee Ave., Suite 400
Las Vegas, NV  89113
Tel.: (702) 949-8200
Meng.Zhong@wbd-us.com

*Attorneys for Plaintiffs TSK Laboratory Europe B.V.; Johnson Global Medical Products Inc., d/b/a TSK Laboratory International, Canada; and ACollaboratory America Inc.*

-17-

COMPLAINT